STATE OF HAWAII, Plaintiff-Appellee *v.*
RICHARD KAHALEWAI, also known as
Richard Gabriel, Defendant-Appellant

No. 5171

OCTOBER 3, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Richard Kahalewai was indicted on September 23, 1970, for having sexual intercourse with a female under the age of sixteen in violation of HRS § 768-62. At the arraignment proceeding on October 2, 1970, at which Mr. Kahalewai was present, counsel for the defendant informed the trial court that the defendant wished to waive his right to trial by jury.[1] On October 7, 1970, Mr. Kahalewai was tried without a jury and convicted. On May 11, 1971, through another counsel appointed for the purpose of appeal, Mr. Kahalewai filed a motion that the judgment of conviction be set aside and for a new trial. The motion was denied and Mr. Kahalewai appeals that decision to this court.

This appeal raises two issues: (1) whether a demand in open court for a jury-waived trial by an accused's

---

[1]The record of the arraignment proceeding on October 2, 1970, contains the following:

THE CLERK: Criminal No. 41252, State of Hawaii versus Richard Kahalewai, also known as Richard Gabriel.

MR. KITAOKA: May the record show that I am representing the defendant and that he is present. This is a matter for arraignment and plea.

(Discussion followed.)

MR. KITAOKA: I acknowledge receipt of the Indictment and consent to its entry in the words and figures thereof. We are ready to plead, your Honor.

THE COURT: What is your plea, Richard Kahalewai?

THE DEFENDANT: Not guilty.

THE COURT: Jury trial, of course.

MR. KITAOKA: May we have an early trial, early date? This shouldn't take long. Waive jury, your Honor.

counsel in the accused's presence constitutes a voluntary and knowing waiver of the accused's constitutional right to a jury trial in accordance with Rule 23 (a) of the Hawaii Rules of Criminal Procedure; and (2) whether the appellant was denied effective assistance of counsel.

The first question was answered in the affirmative by the court's decision in *State v. Olivera,* 53 Haw. 551, 497 P.2d 1360 (1972).

As to the second issue, we do not believe the appellant was denied effective assistance of counsel.

The constitutional right to the assistance of counsel in a criminal case, Hawaii Const., Article I, Sec. 11,[2] U.S. Const. 6th Amend., 14th Amend.; *see Gideon v. Wainwright,* 372 U.S. 335, 342 (1963), is satisfied only when such assistance is "effective." *Powell v. Alabama,* 287 U.S. 45, 71 (1932); *Reece v. Georgia,* 350 U.S. 85, 90 (1955); *People v. Ibarra,* 60 Cal.2d 460, 464, 386 P.2d 487, 34 Cal. Rptr. 863 (1963). "Effective" counsel does not mean errorless counsel but counsel whose assistance is "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771 (1970).

Although determining whether the demands of due process have been met in this case involves measuring counsel's assistance against "the fundamental ideas of fairness and right," *Betts v. Brady,* 316 U.S. 455, 473 (1942) and is always a question of judgment and degree, *Brubaker v. Dickson,* 310 F.2d 30, 37 (9th Cir. 1962), general standards have evolved which this court will apply to aid it in making this determination. A primary requirement is that counsel must "conduct careful factual and legal investigations and inquiries with a view to developing matters of defense in order that he may make informed decisions on his client's behalf," *In re Saunders,*

---

[2]Article I, Section 11 of the State Constitution was modeled after the 6th Amendment and was intended to incorporate it and to give the State the benefit of federal decisions construing the same language. State v. Wong, 47 Haw. 361, 385, 389 P.2d 439, 452 (1964).

2 Cal.3d 1033, 1041, 472 P.2d 921, 926, 88 Cal. Rptr. 633, 638 (1970), both at pretrial proceedings, *cf. Von Moltke* v. *Gillies,* 332 U.S. 708, 721 (1948), *In re Williams,* 1 Cal.3d 168, 174-76, 460 P.2d 984, 988-89, 81 Cal. Rptr. 784, 788-89 (1969), *In re Saunders, supra,* and at trial, *Brubaker* v. *Dickson, supra,* 310 F.2d 30 (9th Cir 1962), *People* v. *Ibarra,* 60 Cal.2d 460, 464, 386 P.2d 487, 34 Cal. Rptr. 863 (1963), *In re Saunders, supra* at 1042.

With the above standards in mind we proceed to consider defendant's allegations.

The thrust of appellant's argument is that his trial counsel's advice to waive jury trial was based on uninformed judgment, because trial counsel advised appellant to opt for a bench trial on the ground that appellant's conviction for burglary in 1957 would serve as a handicap in a jury trial. This advice was given in ignorance of the rule articulated by this court in *Asato* v. *Furtado,* 52 Haw. 284, 293, 474 P.2d 288, 295 (1970) (filed on September 8, 1970, twenty-four days prior to appellant's arraignment) :

> The rule we adopt is that a prior conviction may come in if, but only if, the trial judge, in his discretion, feels that the party offering the evidence has satisfactorily shown that the conviction to be proved rationally carries probative value on the issue of the truth and veracity of the witness.

Although admitting that whether *Asato* would have barred the case of defendant's burglary conviction for impeachment was "arguable", appellant contends that the *Asato* rule "should make a pretrial motion to suppress a thirteen-year-old conviction mandatory before advising a jury waiver on the grounds the conviction could be used for impeachment." As trial counsel not only did not make the motion but had not even read *Asato,* "the conclusion," appellant argues, "is unavoidable . . . [that trial counsel's advice] was not within the range of competence demanded of attorneys in criminal cases."

Appellant reached his conclusion, however, without first considering the primary issue in this case. In cases where the adequacy of counsel is in question, we must first examine the record with appellant's allegations in mind, to determine whether, viewed as a whole, the assistance provided appears to have been below the level of ordinary competence demanded of lawyers in criminal cases. If this examination shows that defenses crucial to appellant's case could have been, but were not raised, or that trial counsel inexplicably failed to assert appellant's constitutional rights, the case will be examined further to determine whether counsel's actions were the result of informed judgment or constitutionally inadequate preparation. The issue of informed judgment, on which appellant places so much emphasis, is only relevant where the actions or inactions resulting from that judgment seem unreasonable. If this were not so, every criminal conviction would be vulnerable on appeal to the allegation or admission that trial counsel's choice of defenses or tactics, reasonable on the surface, had actually been made in gross ignorance of important rules of law.[3]

In the instant case, appellant's allegation could only succeed if it were established that advising a jury trial waiver, in view of the record as a whole, was unreasonable. This has not been established. Appellant's prior criminal record was only one of several factors to be considered in reaching the determination to advise a non-jury trial. That a jury may be unfavorably disposed toward a criminal defendant considerably past the age of majority and charged with having sexual intercourse with a female under the age of sixteen, like the appellant in the present case, is frequently a salient consideration. And a maneuver designed to avoid this highly probable adverse reaction, cannot be deemed unreasonable.

---

[3]*See, e.g.,* People v. Guerin, 22 Cal. App. 3d 775, 784, 99 Cal. Rptr. 573, 579 (1972) where appellant's trial counsel, a practitioner for 22 years, alleged in the face of a faultless trial record that his own trial performance had been so incompetent that he had reduced the trial to a farce or sham.

For the reasons stated above, the judgment of denial of the appellant's motion that the judgment of conviction be set aside and for a new trial is affirmed.

*James Blanchfield,* Deputy Public Defender (*Brook Hart,* Public Defender, with him on the briefs), for defendant-appellant.

*Richard D. Wurdeman,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the brief), for plaintiff-appellee.

---

### DISSENTING OPINION OF LEVINSON, J.

I dissent.

For the reasons stated in my dissenting opinion in *State* v. *Olivera,* 53 Haw. 551, 555, 497 P.2d 1360, 1362 (1972) I do not think an open court demand for a non-jury trial made by counsel in the accused's presence constitutes a voluntary and knowing waiver by the accused of his right to trial by jury.

It is equally clear to me that an accused is denied the right to effective assistance of counsel[1] when counsel advises a waiver of the right to trial by jury without first having read a decision of this court bearing directly upon his reason for giving such advice. "[U]nlike other decisions, which are often called 'trial decisions,' where it is counsel who decides whether to cross examine a particular witness or introduce a particular document," *Poe* v. *United States,* 233 F. Supp. 173, 176 (D.C.C. 1964) (Wright, J., sitting by designation), the decision whether to waive the right to trial by jury is personal to the accused. Since it is the accused who must make the ultimate decision, it is counsel's duty to provide him with all

---

[1]An accused in a criminal trial has the right to the effective assistance of counsel in his defense. This right is guaranteed and protected by the Sixth Amendment and is a necessary requisite of due process of law under the Fourteenth Amendment to the United States Constitution. Powell v. Alabama, 287 U.S. 45, 71 (1932); People v. Ibarra, 60 Cal. 2d 460, 386 P.2d 487, 34 Cal. Rptr. 863 (1963).

relevant information, both factual and legal, on which he can rely in making his decision. *People* v. *Ibarra,* 60 Cal. 2d 460, 386 P.2d 487, 34 Cal. Rpter. 863 (1963).

In this case, counsel's failure to read and thereby take into account a matter of law, particularly one established by the highest court in this state, relating to an important legal fact counsel himself considered highly significant, establishes, in my view, a clear violation of appellant's right to effective assistance of counsel. Without first familiarizing himself with the applicable law, counsel could not and did not exercise any judgment with respect to his advice to waive trial by jury.

The cost of keeping abreast of current legal developments in this jurisdiction, where counsel is licensed and practices law, is minimal. Further, it is not unrealistic to expect counsel to subscribe to and read decisions of this court within a reasonable time after they are published. At the least, upon undertaking representation, counsel can be expected to examine the advance sheets, as a matter of course, to determine whether any recent decisions bear upon the matter at hand. As it is stated in the *Code of Professional Responsibility* adopted by this court, counsel "should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle." *Code of Professional Responsibility,* EC 6-1 (1970).

IN THE MATTER OF THE ESTATE
OF HO POI, DECEASED

No. 5162

IN THE MATTER OF THE ESTATE
OF HO POI, DECEASED

No. 5115

COOKE TRUST COMPANY, LIMITED, an Hawaiian
Corporation, Administrator with the Will Annexed
of the Estate of Ho Poi, Petitioner-Appellee, *v.*
KAM HON HO and RONALD KWAI LUNG HO,
Respondents-Appellants

No. 5117

OCTOBER 4, 1972

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

36

OPINION OF THE COURT BY LEVINSON, J.

In a will duly executed and attested on February 28, 1935, Ho Poi made the following disposition:

> I do hereby give, devise and bequeath to my lawfully begotten children, surviving me at the time of my death, share and share alike, all of my property, real, personal or mixed and wheresoever situate, of which I am possessed or to which I may be entitled at the time of my death.

When he died on May 29, 1941, Ho Poi was survived by 17 children. The circuit court at chambers, in an order dated December 18, 1970 and which included a determination of devisees entitled to real property and a distribution of the estate, held that each of the 17 surviving children was a devisee and legatee under the will of Ho Poi. Thus, the court ordered the administrator to distribute a 1/17th share of Ho Poi's estate to each of them or to their representatives.

The appellants are among a group of seven of Ho Poi's children (or their heirs) who contested the legitimacy of the other ten before the circuit court at chambers, claiming that the ten were the children of Ho Poi and Chun Shee, a servant girl. While they raise six specifications of error on appeal, only two require consideration. First, they appeal from the court's holding that Equity No. 5664, which was the subject of *In re Estate of Ho Chang Shee,* 48 Haw. 193, 397 P.2d 552 (1964), is "res adjudicata" on the issue of the maternity of the 17 children of Ho Poi. Second, they allege that the circuit court erred in dismissing their appeal of the decision of the

circuit court at chambers, taken pursuant to HRS § 531-2.[1] We affirm.

## I. COLLATERAL ESTOPPEL.

In the *Chang Shee* case, *supra*, the central issue was the maternity of the 17 children of Ho Poi. In that case, the equity court held that each of the 17 children was an heir of Chang Shee, the wife of Ho Poi. We affirmed on appeal in *In re Estate of Ho Chang Shee, supra*, 48 Haw. 193, 397 P.2d 552 (1964).

In his will, Ho Poi designated as his legatees and devisees all his "lawfully begotten children" surviving him at the time of his death. It was admitted in *Chang Shee*, and it is nowhere contested here, that Ho Poi was the father of all 17 children. Thus, if the adjudication in *Chang Shee* of the maternity issue is binding in the instant case, it then follows that all 17 children are "lawfully begotten children" of Ho Poi.[2]

In *Ellis* v. *Crockett*, 51 Haw. 45, 55-56, 451 P.2d 814, 822 (1969), we said:

> Collateral estoppel is an aspect of *res judicata* which precludes the relitigation of a fact or issue which was previously determined in a prior suit on a

---

[1] HRS § 531-2 provides:

*Jury on appeal, when.* Whenever the value of the estate of any deceased person exceeds $500, any person claiming, before any judge sitting as a court of probate, the estate, or any part thereof, or any interest therein, by virtue of any will or testamentary devise, or by virtue of the statutes of descent of property in the State, who deems himself aggrieved, by the decision of the probate judge at chambers, may, upon taking his appeal to the circuit court, if any matter of fact is in issue, move the appellate court that the issue of fact may be tried by a jury, and his motion shall not be denied.

[2] The appellants rely heavily upon Honolulu Investment Company v. Rowland, 14 Haw. 271, 274-5 (1902) for the proposition that "lawfully beggotten" children do not include those born out of wedlock but legitimized by operation of law. This is irrelevant, since if the 17 children are deemed the children of Chang Shee and the paternity of Ho Poi is admitted, they must of necessity be the "lawfully begotten" children of Ho Poi, there being no suggestion that any of the 17 children was conceived at a time when Ho Poi and Chang Shee were not married or that any of the children was adopted.

different claim between the same parties or their privies. . . .

The policy reasons underlying both *res judicata* and collateral estoppel are several. The public interest staunchly permits every litigant to have an opportunity to try his case on the merits; but it also requires that he be limited to one such opportunity. Furthermore, public reliance upon judicial pronouncements requires that what has been finally determined by competent tribunals shall be accepted as undeniable legal truth. Its legal efficacy is not to be undermined. Also, these doctrines tend "to eliminate vexation and expense to the parties, wasted use of judicial machinery and the possibility of inconsistent results." Developments in the *Law—Res Judicata*, 65 Harv. L. Rev. 818, 820 (1952) .

The doctrine of collateral estoppel is clearly applicable to the instant case, inasmuch as the issue of the maternity of Ho Poi's children was resolved in the *Chang Shee* case and the parties both in that and the instant case are either identical or in privity. Whether each of the 17 children was in fact mothered by Chang Shee is now immaterial, because a "final adjudication operates as res judicata even though it is erroneous." *Glover* v. *Fong,* 42 Haw. 560, 574 (1958) . Thus, the circuit court at chambers properly held that *In re Estate of Ho Chang Shee,* 48 Haw. 193, 397 P.2d 552 (1964) was "res adjudicata" on the issue of maternity.

## II. APPEAL TO THE CIRCUIT COURT.

The appellants sought to appeal the decision of the circuit court at chambers in probate to the circuit court pursuant to HRS § 531-2, which permits an appeal by an "aggrieved" legatee, devisee, or heir, when the value of the estate in question exceeds $500 and there exists a matter of fact in issue. On April 20, 1971, the circuit court issued an order dismissing the appeal.

The appeal was properly dismissed. The only matter of fact at issue was that of the maternity of Ho Poi's children, and the appellants were collaterally estopped from raising it.

Affirmed.

*Helen B. Ryan* (*Ryan & Ryan* of counsel) for Appellants, Kam Hon Ho, et al.

*Earl S. Robinson* (*Fong, Miho, Robinson, Zimmermann & McComish* of counsel) for Appellees, Kam Moon Kam, et al.

*G. Richard Morry* (*Anthony B. Craven* with him on the brief, *Conroy, Hamilton, Gibson, Nickelsen & Rush* of counsel) for Administrator C.T.A. and Receiver, First Hawaiian Bank, Appellee.

*Wilfred H. C. Youth* (*Lo, Youth & Ikazaki*) *for Ellen* Wong Ho, et al.