112 P.3d 768

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Peter MOSES, Defendant–Appellant.**

No. 26529.

Intermediate Court of Appeals of Hawai'i.

April 29, 2005.

Certiorari Denied June 9, 2005.

Cynthia A. Kagiwada, on the briefs, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Peter Moses (Moses) appeals the February 24, 2004 Judgment reinstating his convictions in the Circuit Court of the First Circuit (circuit court).

On appeal, Moses contends the circuit court "clearly erred when it found that Moses had waived his physician-patient privilege because Moses neither voluntarily disclosed nor consented to the disclosure of his toxicology report." In the alternative, Moses contends he was "denied the effective assistance of counsel because [his] trial counsel provided the prosecution with a copy of the toxicology report, failed to adequately research the issues of waiver of a privilege and discovery, and failed to adequately advise Moses regarding his physician-patient privilege."

We disagree with Moses that the circuit court clearly erred when it found that Moses had waived his physician-patient privilege. However, we agree that Moses was denied effective assistance of counsel and therefore vacate the circuit court's Judgment and remand this case for a new trial.

## I.

On September 16, 1998, Moses was charged by indictment with Count I, Attempted Murder in the First Degree of Earl Haskell; Count II, Attempted Murder in the

First Degree of John Veneri, Sr.; Count III, Escape in the First Degree; Count IV, Theft in the First Degree; Count V, Place to Keep Pistol or Revolver; Counts VI and VII, Terroristic Threatening in the First Degree; Count VIII, Unauthorized Entry into Motor Vehicle; and Count IX, Attempted Unauthorized Control of Propelled Vehicle.

After a jury trial,[1] Moses was convicted of Count I as charged; convicted of the included offense of Attempted Assault in the First Degree as to Count II; and convicted of Counts III–VIII as charged. Judgment was filed on December 8, 1999.

Moses appealed, contending the circuit court erred by: (1) failing to instruct the jury regarding his defense theory that the State failed to prove, beyond a reasonable doubt, that the shootings were the result of a voluntary act; (2) admitting evidence of the drug test results, which detected trace amounts of cocaine metabolite, where the negligible probative value was substantially outweighed by the highly prejudicial impact of cocaine use; (3) instructing the jurors that they could consider "evidence of self-induced intoxication" to prove Moses acted with the requisite state of mind where there was insufficient evidence to conclude that Moses was actually under the influence of cocaine at the time of the shooting; (4) excluding testimony by Moses' firearm expert that refuted the State's theory that Moses acted with the requisite intent to kill; (5) allowing Moses to be convicted of theft of a firearm (Count IV) and place to keep firearm (Count V) since the charges merged under Hawaii Revised Statutes (HRS) § 701–109; (6) imposing mandatory terms of incarceration under HRS § 706–660.1(3) in the absence of proof that Moses recklessly disregarded a substantial risk that the gun he possessed was a semiautomatic firearm; and (7) failing to grant his motion for a new trial.

## II.

Prior to trial, the State filed "State's Motion in Limine No. 2," on August 6, 1999, requesting the circuit court "to grant an order permitting the State to introduce evidence that upon Defendant's admission to Queen's Medical Center a standard toxicology screening revealed the presence of cocaine." In support of the motion, the deputy prosecuting attorney (Prosecutor) submitted his declaration, which stated in part:

2. The instant case involves the shooting of an on-duty police officer at Makapuu on September 11, 1998.

3. During the incident, Defendant was shot and was transported by medivac [sic] to Queen's Medical Center for treatment.

4. Soon after arrival at the emergency room, he was examined and treated by medical personnel.

5. As part of standard hospital protocol, a toxicology screening was ordered to assist in the Defendant's treatment.

6. The toxicology screening revealed the presence of cocaine.

7. The State seeks to introduce this evidence at trial.

Following an August 23, 1999 hearing at which the circuit court orally granted the State's Motion in Limine No. 2, the circuit court issued on September 10, 1999 the following findings of fact and conclusions of law, which were prepared by the Prosecutor and approved as to form by Moses' attorney (Deputy Public Defender):

### FINDINGS OF FACT, CONCLUSIONS OF LAW

1. On September 11, 1998, Honolulu Police Department personnel responded to investigate the shooting of an on-duty police officer, Earl Haskell, which had occurred in the Makapuu area earlier in the afternoon.

2. During the incident, Defendant was also shot and transported to Queen's Medical Center for treatment.

3. Upon his arrival in the Queen's Emergency Room, he was examined and treated by Dr. Steven Nishida.

4. As part of Defendant's diagnosis and treatment, Dr. Nishida ordered a standard toxicology screening.

1. The Honorable Marie N. Milks presided.

5. This toxicology screening performed by Diagnostic Laboratory Services, Inc. revealed the presence of cocaine metabolites in Defendant's blood and urine.

6. The Court considered the testimony of Susan Yamada (Supervisor of Chemistry and Custodian of Records for Diagnostic Laboratory Services, Inc.), Susan Orr (Nurse Manager, Queen's Medical Center) and William Haning, M.D. (Addiction Psychiatrist).

7. The Court further considered Exhibit A (Transcript of Taped Interview with Officer Earl Haskell by Detective Anderson Hee on September 13, 1998) attached to State's Motion in Limine No. 4.

8. Based upon the totality of circumstances, this Court finds and concludes that the positive finding of cocaine in Defendant's system is more probative than prejudicial. *See,* Rules 401, 402 and 403, *Hawaii Rules of Evidence* [.]

9. Specifically, the Court finds that said evidence is relevant to Defendant's appearance, demeanor, conduct and state of mind before and during the shooting incident. *See,* Section 702–230, *Hawaii Revised Statutes* [.]

10. The Court further finds that the probative value of Defendant's cocaine use may have actually had on Defendant is a matter of weight and not admissibility.

11. The Court accepts the prosecutor's representation that said evidence is not offered on the issue of Defendant's character.

12. The Court further finds and concludes that Defendant's remaining arguments lack merit as they seek exclusion of said evidence based upon: (1) the claim that the police did not have a warrant to obtain blood or urine samples from Defendant; and (2) the claim of physician-patient privilege.

13. As to Defendant's first claim, the Court finds that the toxicology screens were ordered by Defendant's attending physician and not the result of state action. As such, no warrant was required.

14. As to Defendant's second claim, the Court finds that while Defendant may have a proprietary interest in the blood or urine samples which were analyzed, the obtaining of these samples did not constitute "confidential communications" which implicate the physician-patient privilege. *See,* Rule 504, *Hawaii Rules of Evidence* [.]

The question before this court in Moses' prior appeal was whether the results of the toxicology screening of blood and urine samples from Moses constituted a confidential communication under the physician-patient privilege set forth in Hawaii Rules of Evidence (HRE) Rule 504.[2]

This court concluded that the circuit court erred when it ruled the toxicology screens ordered by Moses' attending physician were not confidential communications covered by the physician-patient privilege. Our conclusion followed *Dubin v. Wakuzawa,* 89 Ha-

2. The pertinent provisions of Hawaii Rules of Evidence (HRE) Rule 504 are as follows:

**Rule 504 Physician-patient privilege.** (a) Definitions. As used in this rule:
(1) A "patient" is a person who consults or is examined or interviewed by a physician.
(2) A "physician" is a person authorized, or reasonably believed by the patient to be authorized, to practice medicine in any state or nation.
(3) A communication is "confidential" if not intended to be disclosed to third persons other than those present to further the interest of the patient in the consultation, examination, or interview, or persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician, including members of the patient's family.

(b) General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition, including alcohol or drug addiction, among oneself, the patient's physician, and persons who are participating in the diagnosis or treatment under the direction of the physician, including members of the patient's family.
The Commentary to HRE 504 states:
The rule makes clear that privileged communications may relate to the diagnosis or treatment of "physical, mental, or emotional condition[s], including alcohol or drug addiction." Designed to encourage free disclosure between physician and patient, the privilege belongs only to the patient and may be invoked by the physician "only on behalf of the patient."

wai'i 188, 970 P.2d 496 (1998), and was dictated by the stated purpose of the privilege: "to encourage free disclosure between physician and patient." Commentary to HRE 504. As we noted, "information obtained by a physician from a patient through a physical examination and diagnostic tests can be far more valuable in diagnosing and treating a patient than information obtained from statements the patient makes to the physician. A privilege that would exclude the results of physical examinations and diagnostic tests is almost no privilege at all." *State v. Moses*, 103 Hawai'i 111, 127, 80 P.3d 1, 17 (App.2002).

## III.

Although not raised in the circuit court or in its answering brief in Moses' prior appeal, the State contended at oral argument that assuming arguendo the physician-patient privilege applied, the privilege was waived by Moses. To support this contention, the State directed this court's attention to the March 23, 1999 hearing before the Honorable John S.W. Lim on Moses' "Motion to Compel Discovery, or in the Alternative, Motion to Dismiss Indictment" and "Motion for Bill of Particulars, or in the Alternative, Motion to Dismiss Indictment." Informing the circuit court on the exchange of discovery materials, the Deputy Public Defender stated at that hearing:

> [Deputy Public Defender:] The medical records of Earl Haskell, beginning with his injury on September 11th. I've just been given a packet of discovery by the State which I assume to be that on this date, and

3. The relevant Hawaii Rules of Evidence are:

> **Rule 511 Waiver of privilege by voluntary disclosure.** A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is a privileged communication.
>
> **Rule 512 Privileged matter disclosed under compulsion or without opportunity to claim privilege.** Evidence of a statement or other disclosure of privileged matter is not admissible against the holder of the privilege if the disclosure was (1) compelled erroneously, or (2) made without opportunity to claim the privilege.

I've signed for it and I appreciate that from [Prosecutor]. We have provided [the Prosecutor] previously with the defendant's medical records so that those didn't have to be subpoenaed and compelled.

This court concluded the record before this court was inadequate to determine what was in "defendant's medical records" that the Deputy Public Defender said she provided to the State. We therefore declined the request of the State to consider its argument that Moses waived his physician-patient privilege.[3] *Moses*, 103 Hawai'i at 128, 80 P.3d at 18.

## IV.

Because we concluded in Moses' prior appeal that the results of the toxicology screening of blood and urine samples from Moses were confidential communications under the physician-patient privilege, we then addressed the question of whether the erroneous admission of this evidence was harmless.[4] *Id.*

At Moses' trial, Dr. Steven Nishida (Dr. Nishida) testified that he was a general surgeon on duty at the Queen's Medical Center emergency room when Moses was brought in by ambulance. He further testified that Moses' blood screen tested positive for cocaine metabolites and Moses' urine screen tested positive for cocaine.

Dr. William Freze Haning (Dr. Haning) testified that he was a board-certified addiction psychiatrist. He testified that cocaine is capable of suppressing appetite and sleep,

4. In *State v. Gano*, 92 Hawai'i 161, 988 P.2d 1153 (1999), the Hawai'i Supreme Court held:

> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in [the] light of the entire proceedings and given the effect [ ] which the whole record shows it [to be] entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.
>
> If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*Gano*, 92 Hawai'i at 176, 988 P.2d at 1168 (internal quotation marks and citations omitted; block quote format changed).

enhancing momentary attention and ability to focus/concentrate, and acting as an aphrodisiagenic and euphorigenic. He also stated that as use and frequency increase, cocaine can cause paranoia, fearfulness, irritability, agitation, and an increasing willingness to be aggressive and defensive. He added that the effects may include hallucinations and delusions. According to Dr. Haning, Moses' blood test showed the presence of cocaine metabolite benzolecgonine and Moses' urine test indicated the minimum concentration of cocaine necessary to produce a positive result. Dr. Haning testified that Moses' test results indicated the presence of cocaine metabolites, Moses would have had to ingest cocaine to get those test results, and there was an 80% probability that Moses had ingested the cocaine within twenty-four hours before the blood tests.

Following Dr. Haning's testimony, the circuit court gave the following instruction to the jury:

The prosecution has introduced evidence that defendant Peter Moses tested positive for cocaine metabolites shortly after he was admitted to Queen's Medical Center on September 11, 1998.

Defendant's possible intoxication from cocaine use may not be considered by the jury as a defense to any of the offenses charged and may not be used to disprove that defendant acted with the required mental state for any offense. However, evidence of intoxication at the time of the conduct charged may be considered by the jury in deciding if defendant acted in any relevant manner or had any relevant state of mind to prove any of the offenses charged.

At the conclusion of evidence, the circuit court gave the following jury instruction:

Evidence of self induced intoxication of the defendant may not be used to negative the state of mind sufficient to establish an element of the offense. However, evidence of self induced intoxication of the defendant may be used to prove or negative conduct, or to prove state of mind sufficient to establish an element of an offense.

Quote, intoxication, end quote, means a disturbance of mental or physical capacities resulting from the introduction of substances, including alcohol, into the body.

Quote, self induced intoxication, end quote, means intoxication caused by substances, including alcohol, which the defendant knowingly introduces into his or her body, the tendency of which to cause intoxication he or she knows or ought to know.

During closing argument, the State argued:

[Prosecutor:] Defendant's story. What do we know? Let's look at a few things. We know he's an admitted liar. He lies when it's convenient. You consider that. We would submit that he was not completely credible. And he certainly was not, we would submit, truthful to you when he told you the version of the events that he wants you to believe.

Basically, he says he was thinking clearly. But he's got cocaine in his system.

[Deputy Public Defender]: Objection.

THE COURT: I'll permit. Overruled. There's an instruction to the jury.

[Prosecutor]: He's got cocaine in his system. Nobody is saying that he was so high and bonzo on drugs that he didn't know what he was doing. We know he had drugs in his system. That's a fact. But then he took the witness stand and when asked directly by me, "So you're on cocaine," he denies being on cocaine.

What is that, some loophole there, sort of to say well, you know, I was thinking clearly, therefore my recollection of the events is better than the three police officers? Who, we would submit, were not impaired in any way, shape or form as far as the cocaine, as the defendant was.

The evidence erroneously admitted went to Moses' state of mind and conduct as well as to his credibility. The circuit court instructed the jury on two occasions that evidence of Moses' testing positive for cocaine could be considered in deciding Moses' state of mind and conduct, which, based on Dr. Haning's testimony, could include paranoia, fearfulness, irritability, agitation, increasing willingness to be aggressive and defend oneself against perceived threats, hallucinations, and delusions.

The State argued in its closing that Moses had cocaine in his system and therefore would not have been thinking as clearly as the three police officers who were not impaired by cocaine. Furthermore, the State argued that Moses was an admitted liar and could not be believed because he denied being on cocaine.

Moses' convictions resulted from the jury believing the testimony of the three police officers as opposed to Moses' testimony. We concluded there was a reasonable possibility that the evidence that Moses had tested positive for cocaine may have weighed against Moses and, therefore, contributed to his conviction of all charges except Count VIII, Unauthorized Entry into Motor Vehicle, which Moses conceded. *Moses,* 103 Hawai'i at 129, 80 P.3d at 19.

This court held that the circuit court erred when it admitted drug test results indicating Moses had ingested cocaine and that this error was not harmless beyond a reasonable doubt. *Id.* at 129–30, 80 P.3d at 19–20. We vacated the Judgment, with the exception of Moses' conviction and sentence pursuant to Count VIII (Unauthorized Entry into Motor Vehicle) which we affirmed, and remanded this case to the circuit court for a new trial on the remaining counts. *Id.* at 130, 80 P.3d at 20.

### V.

The State applied for a writ of certiorari to review our decision. In its application, the State contended this court gravely erred in not holding that Moses had waived his physician-patient privilege. In the alternative, the State contended this court erred in not remanding the case to the circuit court for an evidentiary hearing on whether Moses waived his privilege.[5]

The Hawai'i Supreme Court held that this court gravely erred in failing to remand this case to the circuit court for an evidentiary hearing on whether Moses did, in fact, waive his physician-patient privilege. *State v. Mo-*

ses, 102 Hawai'i 449, 77 P.3d 940 (2003). The supreme court vacated this court's opinion insofar as it remanded this case for a new trial on Counts I through VII, affirmed our opinion as it vacated the judgment and sentence of the circuit court as to Counts I through VII, and affirmed the judgment and sentence of the circuit court as to Count VIII. The supreme court remanded this case to the circuit court for an evidentiary hearing to determine whether Moses waived his privilege. The court stated that "[i]f the circuit court concludes that Moses did not waive his privilege, then the circuit court should proceed to a new trial; if the court finds that Moses did waive his privilege, then the circuit court should enter a new judgment reinstating Moses's [sic] convictions." *Id.* at 451, 77 P.3d at 942.

### VI.

On remand, an evidentiary hearing was held on February 11, 2004[6] to specifically respond to the Hawai'i Supreme Court's instructions. Moses was represented by two public defenders, including the Deputy Public Defender who had represented him at trial. The supreme court had instructed the circuit court to respond to two questions to resolve the issue of waiver of the physician-patient privilege: "(1) whether Moses's [sic] toxicology report was furnished to the prosecution by counsel for Moses; and (2) assuming the toxicology report was furnished to the prosecution, did Moses 'voluntarily disclose or consent to disclosure' of the toxicology report?" *Moses,* 102 Hawai'i at 457, 77 P.3d at 948 (brackets omitted).

At the evidentiary hearing, the parties stipulated (1) to the admission of Moses' medical records (including the toxicology report provided on October 20, 1998 to the State by Moses' Deputy Public Defender); (2) that the Prosecutor received a letter dated January 30, 1999 from the Deputy Public Defender; (3) to the March 23, 1999 transcript of proceedings of Moses' Motion to

---

5. This court was never requested by the State to remand this case to the circuit court for an evidentiary hearing on whether Moses waived his privilege. The request was first made by the State in its writ of certiorari application.

6. The Honorable Marie N. Milks presided.

Compel Discovery and Motion for Bill of Particulars; and (4) to a "separate set" of Moses' "medical records received from the Queen's Medical Center independently of the medical records turned over in stipulation one." The circuit court took judicial notice of the records, files, and opinion of the supreme court and received exhibits into evidence. The circuit court heard testimony from the Prosecutor who tried the case, the Deputy Public Defender who represented Moses at trial, and Moses, and heard arguments by the parties.

On February 23, 2004, the circuit court issued the following "Response to Supreme Court Questions on Remand":

### Findings

[The Deputy Public Defender] testified that when she met with Moses, she would keep him informed of his case, using common vernacular, so as to insure his understanding. They discussed the purpose of reviewing his medical records and she obtained his consent to have Queen's Medical Center (QMC) release his records. This was confirmed by Moses who testified that he "signed a paper for her to use" to get the medical records.

The evidence established that on October 5, 1998 [the Deputy Public Defender] specifically requested Moses's [sic] medical records regarding his admission to QMC on September 11, 1998 "including any records relating to any blood or urine samples taken and analyzed for the presence of alcohol or drugs." In that letter, she enclosed Moses's [sic] release. [Exhibit 1] Thereafter, those records were forwarded to [the Prosecutor] on October 20, 1998. [Exhibit 1] On that same date, QMC produced Moses's [sic] entire medical records to [the Prosecutor] in response to a subpoena duces tecum. No objections were made, nor any motion for protective order filed. [Exhibit 6]

In a letter dated January 30, 1999 [Exhibit 2], [the Deputy Public Defender] requested the records of Officer Earl Haskell, the complainant in Count 1, and confirmed that she had already forwarded Moses' medical records. [The Prose-

cutor] testified that the records he received from [the Deputy Public Defender] included the toxicology report.

At a hearing on March 23, 1999 before the Honorable John S.W. Lim, [the Deputy Public Defender] represented to the court that she had previously provided [the Prosecutor] with "the defendant's medical records so that those didn't have to be subpoenaed and compelled." [Exhibit 3]

As Moses's [sic] counsel, [the Deputy Public Defender] acted on his behalf in forwarding the toxicology report to [the Prosecutor]. Moses testified that he was kept informed by [the Deputy Public Defender] of the need for his medical report to assist him in his defense. He was in agreement with counsel in seeking them from QMC and consented to release of the record. He did not testify to any conduct by [the Deputy Public Defender] to mislead him or to cajole or coerce his consent to release the QMC medical records. Based on the totality of circumstances, this court finds that Moses and his counsel mutually considered and determined that obtaining the medical reports would be to his benefit.

Several months later, at a hearing on motions in limine on August 23, 1999 to determine the admissibility of evidence [Defense exhibit—transcript of proceedings], [the Deputy Public Defender] objected to the toxicology evidence, citing to the physician-patient privilege provided by Hawai'i [sic] Rules of Evidence (HRE) 504, asserting that Moses could "claim the privilege not to have it revealed in a public manner." As of the date of that hearing, no motion for a protective order had been filed pursuant to Rule 16 of the Hawai'i Rules of Penal Procedure (HRPP) to prevent the disclosure of the toxicology report to [the Prosecutor].

### Discussion

The response to Question (1) is not in dispute.

HRE Rule 511 provides that a holder of a privilege under the Rules waives the privilege upon voluntary disclosure or consent to disclosure. At the time the toxicol-

ogy report was forwarded to [the Prosecutor], Moses was represented by competent counsel who informed him of the purpose of the consent to release form. The privilege protects a personal right of confidentiality; it does not confer a constitutional right.

Moses's [sic] counsel was acting on his behalf in requesting the materials and he was counseled during the course of her representation. Moses was informed and was aware of the nature of the request for his medical records and that the reports would be part of the materials necessary for trial preparation.

HRPP 16(c)(2)(ii) requires disclosure by the defense of any report "which the defendant intends to introduce as evidence." Since the toxicology report was provided to the prosecutor, this court concludes that the defense contemplated the introduction of the toxicology report at trial. [The Deputy Public Defender's] correspondence, which specifically referenced the medical reports (including the toxicology report), is evidence that the disclosure was not inadvertent, but purposeful. The toxicology report was forwarded to the prosecution independently of the subpoena duces tecum, and not a result of an order to compel.

Whether the physician-patient privilege is waived does not rise to the level of a constitutional inquiry, which imposes the burden on the state to show that the waiver of the privilege was voluntary. Rather, the issue is whether the disclosure was voluntary and whether Moses consented to disclosure.

The evidence has established that Moses was aware that counsel would forward the report to the prosecution and that he consented to the disclosure. Moses' subjective intent in consenting to disclosure is not determinative of whether or not he waived the privilege. In fact, he was fully informed of actions that his counsel was undertaking on his behalf. Here, his counsel acted as his agent in requesting the medical records and forwarding his consent to release to QMC. An attorney acts as an agent and may possess the authority

to bind the client. *Save Sunset Beach Coalition v. City and County of Honolulu*, 102 Hawai'i 465 [78 P.3d 1] (2003). Moreover, by any failure to object to his counsel turning the toxicology report over to [the Prosecutor], Moses "ratified" his counsel's actions.

Finally, [the Deputy Public Defender's] objection at the time of the August 23, 1999 hearing is of no consequence, as there is no provision for limited waiver. The commentary to HRE Rule 511 states in pertinent part:

> "Once confidentiality has been destroyed by intentional disclosure, the holder of the privilege may not reinvoke it, and the evidence is as admissible as if no privilege had initially existed."
>
> Citing *McKeague v. Freitas*, 40 H. [sic] 108 (1953).

***Responses:***

1. Based on the evidence presented, as well as the stipulation entered into by counsel, this court finds that the toxicology report was furnished to the prosecution by counsel for Moses.

2. Based on the evidence presented, this court finds that Moses voluntarily disclosed or consented to disclosure of that report, thus waiving his physician-patient privilege.

On February 24, 2004, the circuit court entered a new Judgment, reinstating Moses' convictions. On March 11, 2004, the circuit court filed an order granting the motion of the Office of the Public Defender to withdraw as counsel and have substitute counsel appointed. The circuit court also extended Moses' time to file a notice of appeal until April 24, 2004. Moses timely filed a notice of appeal on April 23, 2004.

## VII.

**A. The Circuit Court Did Not Clearly Err in Finding that Moses Voluntarily Disclosed or Consented to the Disclosure of the Toxicology Report.**

■ We review the circuit court's ruling on Moses' waiver of the physician-patient privilege under the "clearly erroneous stan-

dard." *Save Sunset Beach Coalition v. City and County of Honolulu*, 102 Hawai'i 465, 487, 78 P.3d 1, 23 (2003) ("the court's findings are essentially factual in nature and therefore are reviewed under a clearly erroneous standard," citing to *Alldread v. City of Grenada*, 988 F.2d 1425, 1434 (5th Cir.1993)).

The issue before this court is whether the circuit court's finding that Moses voluntarily disclosed or consented to the disclosure of the toxicology report was clearly erroneous. In *Save Sunset Beach Coalition*, the Hawai'i Supreme Court wrote:

> HRE Rule 511 governs the waiver of privilege through a "voluntary" disclosure, and states:
>
>> A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, *the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter.* This rule does not apply if the disclosure itself is a privileged communication.
>
> HRE Rule 511 (emphasis added). The commentary to this rule explains that "[a]ny intentional disclosure by the holder of the privilege defeats [the purpose of the privilege] and eliminates the necessity for the privilege in that instance." Thus, a waiver analysis would focus on whether the disclosure was voluntary.

*Id.* at 485, 78 P.3d at 21.

It is undisputed that Moses' Deputy Public Defender delivered the toxicology report to the Prosecutor. Additionally, the Deputy Public Defender entered no objection to the Prosecutor's subpoena duces tecum of Moses' medical records, including the toxicology report.

At the February 11, 2004 evidentiary hearing, the Prosecutor testified that the Deputy Public Defender informed the Prosecutor that she would attempt to get her client's medical records and turn the records over to the Prosecutor so the Prosecutor "wouldn't need to go through the process of obtaining them by subpoena or compelling them in some way." The Prosecutor testified that his office received Moses' medical records from the Deputy Public Defender on October 20, 1998.

The Prosecutor testified that at an October 20, 1998 hearing in circuit court, a Queen's Medical Center representative appeared and provided the State with Moses' medical records. Moses was not present, but was represented at the hearing by a substitute public defender. No objection was made by the substitute public defender to the turning over of Moses' medical records by Queen's Medical Center.

Moses' Deputy Public Defender testified that she furnished the Prosecutor with Moses' medical records on October 20, 1998. She stated that in furnishing the Prosecutor with Moses' medical records, it was not her intention to waive Moses' physician-patient privilege.

The Deputy Public Defender testified that she spoke with the Prosecutor about exchanging the medical records of Police Officer Haskell and Moses so these records would not have to be subpoenaed. She stated that these medical records needed to be exchanged under HRPP Rule 16. The Deputy Public Defender testified that she did not recall a specific discussion with Moses about HRPP Rule 16, but was sure she would have talked with Moses about the fact that "discovery has to be provided and will be provided." She testified that she did not solicit from Moses a waiver of the physician-patient privilege in relation to the toxicology report and she had discussed with Moses that it was their intention "to oppose the use of that material from the beginning."

When asked if she had kept it a secret from Moses that she had given his medical records to the Prosecutor, the Deputy Public Defender testified: "I wouldn't have. I'm not sure I specifically discussed it with him, but I would assume because of the motion and the Motion in Limine discovery that he would know that. We always discussed records particularly the toxicology report being our big concern preparing for trial was that that would not be admitted against him because it was privileged material but that we had to turn over records under Rule 16 and

that the State could get these records by subpoena."

■ Moses testified that he met with the Deputy Public Defender before trial and did not remember the term "privilege" ever being discussed with him. When asked if he ever agreed "that it would be okay for the jury to learn that [he] had cocaine in [his] system at the time of the shooting in 1998," Moses answered "No." Moses testified that no one ever asked him to waive and he never waived his physician-patient privilege. In *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337 (9th Cir.1996), the United States Court of Appeals for the Ninth Circuit held that

the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the [privileged] relationship, not the holder's intent to waive the privilege.... [F]or example, [ ] a holder's disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed, despite the holder's bare assertion that it did not subjectively intend to waive the privilege when it made the disclosure.

*Id.* at 341 (internal quotation marks and citations omitted).

Because "an attorney acts as an agent and may possess the authority to bind the client" when it comes to waiving the privilege pursuant to HRE Rule 511, we conclude the circuit court's ruling that Moses voluntarily disclosed or consented to disclosure of the toxicology report, thus waiving his physician-patient privilege, was not clearly erroneous. *Save Sunset Beach Coalition*, 102 Hawai'i at 486, 78 P.3d at 22.

### B. Moses Was Denied Effective Assistance of Counsel

In the alternative, Moses contends, for the first time on appeal, that he was denied effective assistance of counsel because his Deputy Public Defender provided a copy of his toxicology report to the State without adequately researching the issue of waiver and without providing adequate advice to Moses on the same. A criminal defendant's right to effective assistance of counsel is guaranteed by Article I, § 14 [7] of the Hawai'i Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. *State v. Kahalewai*, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972).

■ The proper standard for claims of ineffective assistance of counsel on appeal is whether, "viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases." *Dan v. State*, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994) (internal quotation marks, citation, and brackets omitted).

When an ineffective assistance of counsel claim is raised, the defendant has the burden of establishing: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.

*State v. Jones*, 96 Hawai'i 161, 166, 29 P.3d 351, 356 (2001) (internal quotation marks and citation omitted).

■ "Determining whether a defense is potentially meritorious requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker. Accordingly, no showing of actual prejudice is required to prove ineffective assistance of counsel." *Barnett v. State*, 91 Hawai'i 20, 27, 979 P.2d 1046, 1053 (1999) (internal quotation marks, citation, and ellipsis omitted) (quoting *State v. Fukusaku*, 85 Hawai'i 462, 480, 946 P.2d 32, 50 (1997)).

■ The State argues that Moses' ineffective assistance of counsel claim should not be considered because this claim is raised for the first time on appeal. The State took a contrary position in the prior appeal in this case, raising the waiver issue for the first time in oral argument before this court. The Hawai'i Supreme Court found the State had

---

7. *State v. Kahalewai*, 54 Haw. 28, 501 P.2d 977 (1972), states that the right to effective assistance of counsel is guaranteed under Article I, § 11; however, in 1978, after the Constitutional Convention, § 11 was renumbered to become § 14 of Article I.

no need to raise the waiver argument before the circuit court and thus was not barred from raising the issue for the first time on appeal. *Moses*, 102 Hawai'i at 457, 77 P.3d at 948. The supreme court stated that "this court will consider new arguments on appeal where justice so requires." *Id.* at 456, 77 P.3d at 947.

Justice also requires this court to consider Moses' ineffective assistance of counsel claim against his Deputy Public Defender because "no realistic opportunity existed to raise the issue" while Moses was still represented by the Office of the Public Defender. *Briones v. State*, 74 Haw. 442, 459, 848 P.2d 966, 975 (1993). In its motion to withdraw as counsel and have substitute counsel appointed, the Office of the Public Defender based its motion on Moses' anticipated ineffective assistance of counsel claim on appeal.

Our appellate courts entertain ineffective assistance of counsel claims for the first time on appeal where the "record is sufficiently developed to determine whether there has been ineffective assistance of counsel." *State v. Silva*, 75 Haw. 419, 439, 864 P.2d 583, 592 (1993). Contrary to the State's argument, we conclude the record is sufficiently developed in this case to determine whether there was ineffectiveness of counsel.

The State cites to *Matsuo v. State*, 70 Haw. 573, 578, 778 P.2d 332, 335 (1989), to support its position that it would be premature to address Moses' ineffectiveness of counsel claim because his Deputy Public Defender "has not been afforded *any* opportunity to defend herself against such claim" or explain her side of the story. In *Matsuo*, the claim of ineffectiveness of counsel was based on trial counsel's decision not to call certain witnesses at trial. *Id.* at 578, 778 P.2d at 335. Trial counsel did not testify at the hearing for post-conviction relief as to why

these witnesses were not called. *Id.* The Hawai'i Supreme Court stated that trial counsel should have been given every opportunity to explain the reasons for not calling the witnesses at trial. *Id.*

What was not done in *Matsuo* was done in this case. Moses' only claim of ineffectiveness on appeal is the Deputy Public Defender's delivering his medical records, in particular the toxicology report, to the State. The Deputy Public Defender was extensively questioned in the circuit court about turning Moses' medical records over to the Prosecutor. The Deputy Public Defender explained in detail how and why she presented these records to the State.

██ The record in this case clearly establishes "there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence" in providing the toxicology report to the State. *Jones*, 96 Hawai'i at 166, 29 P.3d at 356. The Deputy Public Defender mistakenly concluded that she was required under HRPP Rule 16 to turn over Moses' medical records to the State. She testified that the reason she gave Moses' medical records to the Prosecutor was that she was required to do so under Rule 16, the State could have gotten the records anyway by subpoena (the Deputy Public Defender entered no objection to the State's subpoena duces tecum of Moses' medical records), it was not her intention in delivering Moses' records to the Prosecutor to waive the physician-patient privilege, and it was her and Moses' intention to oppose the use of the toxicology report ("our big concern preparing for trial was that that would not be admitted against [Moses] because it was privileged material"). Hawai'i Rules of Penal Procedure Rule 16(c)(2)(ii) [8] would have required Moses to turn over the

---

8. Hawai'i Rules of Penal Procedure Rule 16(c)(2)(ii) provides in relevant part:

   **Rule 16.   DISCOVERY.**

   . . . .

   (c)  Disclosure by the defendant.

   . . . .

   (2) DISCLOSURE OF MATERIALS AND INFORMATION. The defendant shall disclose to the prosecutor the following material and information within the defendant's possession or control.

   . . . .

   (ii) any reports or statements of experts, including results of physical or mental examinations and of scientific tests, experiments or comparisons, which the defendant intends to introduce as evidence at the trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony[.]

toxicology report had he intended to introduce it as evidence at trial. This was clearly not the case.

The Deputy Public Defender's second mistake was not realizing that by turning Moses' medical records over to the Prosecutor, she was waiving Moses' physician-patient privilege. These errors on the part of the Deputy Public Defender reflected a lack of skill, judgment, and diligence.

■ The next question we must address is whether the Deputy Public Defender's errors "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." *Jones,* 96 Hawai'i at 166, 29 P.3d at 356. "Determining whether a defense is potentially meritorious requires an evaluation of the possible, rather than the probable, effect of the defense on the decision maker," and "no showing of actual prejudice is required to prove ineffectiveness of counsel." *Barnett,* 91 Hawai'i at 27, 979 P.2d at 1053 (internal quotation marks and citation omitted) (quoting *Fukusaku,* 85 Hawai'i at 480, 946 P.2d at 50).

There is a possibility that the Deputy Public Defender's errors substantially impaired Moses' potentially meritorious defense. Without the toxicology report, which would not have been available to the State without the waiver of Moses' physician-patient privilege, Moses' trial would have proceeded without the benefit of the testimony of the State's witnesses, Dr. Nishida and Dr. Haning, on Moses' use of cocaine and the possible effects of cocaine use on Moses' perception and behavior. Dr. Haning had testified that cocaine use can cause paranoia, fearfulness, irritability, agitation, and an increasing willingness to be aggressive and defensive. He added that the effects may include hallucinations and delusions. Moses, through his testimony, gave a substantially different account of what led to the charges against him. The Prosecutor asked the jury who they were to believe: Moses, who was impaired by cocaine, or the police officers, who were not so impaired. The circuit court instructed the jury that Moses' cocaine use could not be used as a defense, but could be used against

him. The jury believed the testimony of the police officers as to what happened rather than Moses' version of events. The Hawai'i Supreme Court agreed with this court's conclusion that

> Moses's [sic] convictions resulted from the jury believing the testimony of the three police officers as opposed to Moses's [sic] testimony. There was a reasonable possibility that the evidence that Moses had tested positive for cocaine may have weighed against Moses and, therefore, contributed to his conviction of all charges except Count VIII which Moses conceded.

*Moses,* 102 Hawai'i at 454, 77 P.3d at 945 (ellipsis omitted). This conclusion was not challenged in the State's writ of certiorari in this case.[9]

In *Briones,* the Hawai'i Supreme Court summarized its holding in *State v. Aplaca,* 74 Haw. 54, 72–73, 837 P.2d 1298, 1307–08 (1992), as follows: "[C]ounsel's failure to call witnesses that could have bolstered defendant's credibility constituted ineffective assistance where the jury's decision rested upon credibility of the defendant and the victim." *Briones,* 74 Haw. at 465, 848 P.2d at 977. In this case, the Deputy Public Defender's errors undermined the credibility of Moses where the jury's decision rested upon the credibility of Moses and the police officers. These errors resulted in the substantial impairment of a potentially meritorious defense and therefore constituted ineffectiveness of counsel.

## VIII.

Because we conclude Moses was denied effective assistance of counsel by the Deputy Public Defender who appeared as his trial counsel, we vacate the February 24, 2004 Judgment of the Circuit Court of the First Circuit and remand this case for a new trial.

---

**9.** In its writ of certiorari, the State also did not challenge this court's conclusion that the physi-

cian-patient privilege applied to Moses' toxicology report.