144 P.3d 561

Kunani R. NIHIPALI and Ipo
R. Nihipali, Petitioners–
Appellants,

v.

Kalaniana'ole Paris APUAKEHAU,
Respondent–Appellee.

No. 26994.

Intermediate Court of Appeals of Hawai'i.

June 7, 2006.

As Corrected July 3, 2006.

E.A. Hoʻoipo Kalaeanaʻauao Pā, on the briefs, for Plaintiffs–Appellants.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

Petitioners–Appellants Kūnani Nihipali (Maternal Grandfather) and Ipō Nihipali (Maternal Grandmother) (collectively, Maternal Grandparents) appeal from the family court's [1] (1) September 21, 2004 "Order Denying Motion for Post Decree Relief for Expanded Visitation and for Appointment of Guardian Ad Litem" (September 21, 2004 Order) and (2) November 12, 2004 "Order Denying First Amended Motion for Reconsideration".[2] We vacate in part, affirm in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Maternal Grandparents are the maternal grandparents of a child (Child) born to Respondent–Appellee Kalanianaʻole Paris Apuakehau (Father) and Nohealani Sandee Nihipali (Mother) on October 15, 1994. On July 3, 2000, Father commenced a family court paternity (FC–P) case. Mother failed to appear at the decisive August 24, 2001 hearing. A judgment entered on September 11, 2001 by Judge Karen M. Radius (1) decided that Father "is the father of [Child]", (2) awarded Father sole legal and physical care, custody, and control of Child, subject to Mother's right of unspecified reasonable visitation, and (3) ordered Mother to pay $210 per month for child support.

On December 19, 2002, Maternal Grandparents commenced this family court miscellaneous (FC–M) case by filing a "Petition of Maternal Grandparents for Rights of Visitation" (Petition) requesting, in relevant part:

[R]easonable visitation privileges as follows:

a. one weekend day and night (24 hours) once a month, the particular day to be reasonably determined by [Child]'s parents in consultation with [Maternal Grandparents];

b. 4–hour outings (e.g. 10 am to 2 pm) as follows:

Maternal Grandparent's [sic] birthdays, March 10th and April 24th

Maternal Great Grandfather's birthdays, February 29th [3]; and

c. Time to take [Child] to additional education and arts lessons to be reasonably determined by the [Child]'s parents in consultation with [Maternal Grandparents].

Judge Lillian Ramirez–Uy presided at a hearing on January 15, 2003. Although a transcript of this hearing is not in the record on appeal, Maternal Grandparents admit that at this hearing the parties reached an agreement regarding visitation which the court orally approved. In the opening brief, according to Maternal Grandparents, "[t]he details of the agreement were to be worked out between the parties, and counsel [for the Maternal Grandparents] was to submit a draft agreeable to all parties within ten days to the court." However, in a September 8, 2004 hearing memorandum, according to Father,

the parties reached a settlement of the matter and the terms of the settlement were read into the record. The Court requested that [counsel for Father] prepare the written stipulation and order which was presented to [Maternal Grandparents] and [Mother] for signature. They refused to sign the written stipulation.

In a facsimile dated March 4, 2003, counsel for Maternal Grandparents transmitted to

1. The Honorable William J. Nagle, III., presided.

2. For the same reasons they appeal from the September 21, 2004 Order Denying Motion for Post Decree Relief for Expanded Visitation and for Appointment of Guardian Ad Litem, petitioners-appellants also appeal from the November 12, 2004 Order Denying First Amended Motion for Reconsideration.

3. Interpreted literally, Maternal Great–Grandfather's birthday is celebrated only once every four years.

counsel for Father a proposed "Stipulation Governing Visitation". This document set forth a visitation plan for Maternal Grandparents as follows:

2. Communication via correspondence and telephone calls. Maternal Grandparents . . . may have unlimited communication and correspondence with [Child] including receiving his telephone [calls], and in addition, are permitted to call [Child] during "reasonable hours" . . . .

3. Maternal Grandparents['] . . . initial visitation plan with [Child] shall include:

a) one weekend day and night [twenty-four (24) continuous hours] on the last weekend of each month, the particular day to be agreed upon by [Father] in consultation with [Maternal Grandparents]; and

b) additional outings with [Child], the duration of which will be agreed upon by [Father], in consultation with [Maternal Grandparents]; including, but not limited to, their birthdays, March 10th and April 24th, and maternal great-grandfather's [sic] birthdays on July 24th and February 29th [4]; and

c) additional outings with [Child] for education and arts enhancement lessons to be agreed upon by [Father], in consultation with [Maternal Grandparents], and

d) such other visitation and privileges as may be extended by [Father].

In order to facilitate the implementation of this stipulation to provide [M]aternal [G]randparents their rights to visit with [Child], consultation between [Father] and [Maternal Grandparents] to set the specific times, dates and places to pick up, visit with, and drop off [Child] shall be arranged by telephone calls and/or in person in a timely manner with mutual respect and consideration by and between [Father] and [Maternal Grandfather] making all reasonable efforts to ensure that . . . [Maternal Grandparents'] visits occur without excuse or unreasonable delay.

▇ [Maternal Grandparents'] visitation and privileges shall be separate and in addition to any visitation and privileges extended to [Mother].

(Footnote added.)

On April 15, 2003, Judge Ramirez–Uy approved and ordered the "Stipulation and Order Re: Grandparents' Visitation" (April 15, 2003 Order) that had been prepared by counsel for Father and approved by Father, but had not been approved by Mother or Maternal Grandparents. This order states, in relevant part:

1. *Correspondence and Telephone Calls.* [Maternal Grandparents] may have unlimited correspondence and telephone contacts with [Child] at any time, provided, however, that calls to [Child] are made during reasonable hours . . . . [I]t is understood among the parties that [Father] shall make all reasonable attempts to ensure that [Child] is available to receive telephone calls from [Maternal Grandparents] from 7:00 p.m. to 8:00 p.m. Hawaii time every evening from Sunday through Thursday . . . .

2 [Maternal Grandparents] recognize that they can do much to minimize any possible negative impact on [Child] as the result of these proceedings. To this end, each of them agrees that they will always support [Child] in having the best possible relationship with [Father] and his wife, Susan Apuakehau (hereinafter "Susan"), they will never disparage, denigrate or belittle [Father] or Susan in the presence of [Child], they will never argue or fight with [Father] or Susan in the presence of [Child] and they will always do whatever they reasonably can to support and ensure that there is as much consistency and continuity as possible in the manner in which [Child] receives direction, guidance and nurturance from [Father] in all areas of his life.

3. *[Maternal Grandparents'] visitation privileges shall be as follows:* (a) Commencing January 2003, one weekend day and night (24 hours) once a month. The particular weekend day shall coincide with [Mother's] visitation schedule, if she is visiting, and to be reasonably determined by

---

4. See n. 3 above.

[Father] in consultation with [Maternal Grandparents]. Subject to the foregoing, it is the parties' goal to provide [Maternal Grandparents] with their weekend day during the last weekend of each month. (b) 4–hour outings (e.g. 10:00 a.m. to 2:00 p.m.) as follows: (1) [M]aternal [G]randparents' birthdays, which are March 10th and April 24th and (2) maternal great-grandfather's birthday, which is February 29th[5]. During these visits [Maternal Grandparents] shall take [Child] to any of his regularly scheduled activities.

(Footnote added.)

On April 16, 2003, counsel for Maternal Grandparents telefaxed a letter to counsel for Father which stated:

[T]he STIPULATION AND ORDER RE: GRANDPARENTS' VISITATION was entered after I had informed you in writing of my medical disability and before I could submit a copy of my clients' proposed stipulation to Family Court Judge Lillian Ramirez Uy. I am greatly concerned that the STIPULATION AND ORDER RE: GRANDPARENTS' VISITATION filed April 15, 2003 has denied my clients a hearing on their petition simply because your client disagrees with their proposed stipulation and you forwarded his proposed stipulation to the Court during my medical disability.

On April 24, 2003, Maternal Grandparents filed a motion for reconsideration requesting:

1) reconsideration of the Order filed April 15, 2003; 2) consideration of their proposed stipulation governing visitation; 3) reconvening the hearing of January 15, 2003 to permit [Maternal Grandparents] to put on their case; and 4) convening a hearing to address [Father]'s violation of the Order filed April 15, 2003, respectively.

There is no indication in the record of the court having taken any action with respect to this motion or of the filing of a notice of appeal.

More than one year later, on July 16, 2004, Maternal Grandparents filed "Petitioners' Motion for a Hearing to Modify and Expand Visitation and for Appointment of a Guardian Ad Litem for [Child]" (July 16, 2004 Motion). In the supporting memorandum, Maternal Grandparents stated, in relevant part:

[Maternal Grandparents] contend that [Child's] welfare requires that he be able to see and visit with his [Maternal Grandparents], and other members of the Nihipali 'ohana[6] to which he was born into, to maintain these important relationships, connections and interdependency between their mo'opuna and the Nihipali 'ohana both present, past and future. . . .

. . . .

The importance of the 'ohana, or extended family to natives of Hawai'i has persisted overtime [sic]. From time immemorial, the 'ohana has been and still is our main social unit of organization. It continues to be practiced in the maintenance and operation of the subsistence lifestyle and essential to the maintenance of the family network. The values, traditions and customs that [Maternal Grandparents] have exercised and practiced are being passed down from one generation to the next, including down to their mo'opuna[7].

These "customary and traditional" values and activities are part of their daily lives, not just practiced for the sake of convenience. In addition to the subsistence activities, cultural activities, norms and values in order to maintain order, harmony, balance and respect for resources, deities associated with these resources are taught. Sharing of resources within the 'ohana and respecting others are important values needed to be taught. There are certain teachings that are done by the father, the mother, the extended 'ohana such as the uncles and aunties and in this case the tūtū[8] that are important.

---

5. No provision was made for those years that do not have a February 29th.

6. " 'Ohana" is "[f]amily, relative, kin group; related." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 276 (rev. ed.1986).

7. In this context, "mo'opuna" means "grandchild". Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 254 (rev. ed.1986).

8. "Kūkū", which is usually pronounced "tūtū", is a "[g]ranny, grandma, grandpa; granduncle, grandaunt; any relative or close friend of grandparent's generation (often said affectionately; ap-

Learning to gather the medicinal plants, identifying them, preparing them are just as important as building a hale [9], fishing, weaving the lauhala [10], learning the stories behind these skills as are the modern contemporary learning of the arts and technology.

. . . .

The 'ohana concept is a multi-generational, self-regulating and interdependent lifestyle that will ensure the continuity of our cultural values, beliefs and practices important in keeping our Hawaiian culture alive and, thus, are at the core of what is protected under the state constitution. The decisions and actions that we follow today will determine the survival or our culture.

(Footnotes added.)

In a supporting affidavit attached as Exhibit "3" to the motion, Mother stated, in relevant part:

3. I support [Maternal Grandparents'] Request for Modification of their visitation schedule to increase their time with [Child], and, when my job as a United Airlines flight attendant interferes with my ability to exercise my rights to "reasonable" visits with [Child], for [Child] to visit with [Maternal Grandparents] in my stead. I am certain this would be in the best interest of my only son, [Child].

. . . .

8. [Child] began living with [Father] on or about 2000. After that time, [Father] remarried to his current wife Susan. My understanding is that the household also now includes their daughter and the sister of [Susan].

. . . .

21. I feel that it is important to [Child's] welfare that he be able to see and visit with me, his tutu/grandparents, and oth-er members of the Nihipali 'ohana to which he was born, to maintain these important relationships, connections and interdependency between their mo'opuna and the Nihipali 'ohana both present, past and future on his maternal side of the Nihipali family.

22. I feel it is in the best interest of [Child] for [Maternal Grandparents] to have the opportunity to carry out their traditional and customary kuleana/right [11] to serve their function as tutu/grandparents, specifically as educators and disseminators of tradition and culture to their mo'opuna. All this requires more and longer visits between [Child] and [Maternal Grandparents].

(Footnotes added.)

In this motion, Maternal Grandparents sought Hawai'i Family Court Rules Rule 60 relief from, and complained about Father's violations of, the April 15, 2003 Order. In addition, Exhibit "4" attached to the motion is a proposed "Expanded Stipulation Governing Visitation" which is essentially the same as the April 15, 2003 Order except that it requests additional visitation as follows:

3. [Maternal Grandparents'] expanded visitations plan with [Child] shall include:

   a. weekends to be agreed upon by [Father] in consultation with [Maternal Grandparents], but in each case [if fewer than two weekends are available for visitation each month, visitation shall be permitted on weekdays so long as [Maternal Grandparents] provide transportation to school when applicable]; and

   b. additional outings with [Child], the duration of which will be agreed upon by [Father], in consultation with [Maternal Grandparents]; including, but not limited to, their birthdays on March 10th and April 24th, and ma-

---

parently a new word as it has not been noted in legends and chants)." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 177 (rev. ed.1986).

**9.** A "hale" is a "[h]ouse, building, institution, lodge, station, hall[.]" Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 52 (rev. ed.1986).

**10.** "Lauhala" is "[p]andanus leaf, especially as used in plaiting." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 195 (rev. ed.1986).

**11.** In this context, a "kuleana" is a "[r]ight, privilege, concern, responsibility[.]" Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 179 (rev. ed.1986).

ternal great-grandfather's [sic] birthdays on July 24th and February 29th [12]; and other important dates and times as needed to attend events such as birthdays, family reunions or deaths or special occasions with family members of the Nihipali 'ohana; and

c.   additional outings with [Child] for education such as visual & performing arts enhancement lessons to be agreed upon by [Father], in consultation with [Maternal Grandparents] so as not to interfere with school days or nights; and

d.   additional outings to include Mother's reasonable visitation schedule on days when she is unable to exercise them[;] and

[e].   such other visitation and privileges as may be extended by [Father].

(Footnotes added.)

In a September 8, 2004, memorandum in opposition to Maternal Grandparent's July 16, 2004 Motion, counsel for Father stated, in relevant part:

At the time of the entry of the [September 11, 2001] Judgment, [Mother] was a flight attendant with United Airlines, based and living in the San Francisco, California area.   Due to her recent employment and occupation, [Mother's] working days with United would change from month to month, and, therefore it was difficult for the parties to agree on a set visitation schedule.   On July 15, 2004, [Mother] filed a Motion for Relief After Judgment or Order and Declaration.... [Mother's] motion requested that she be awarded joint legal and physical custody

and that the Court appoint a custody guardian ad litem.[13]   The initial court hearing on [Mother's] motion was on August 26, 2004.   At that hearing, [Mother] stated that she was on disability leave and living in Hawaii with [Maternal Grandparents], but once that claim is resolved she would terminate her employment with United Airlines and remain in Hawaii with [Maternal Grandparents].   Based upon those representations, [Father] agreed to a Schedule "A" type visitation [14] and the parties agreed to attempt to resolve their differences through the Mediation Center of the Pacific.

(Footnotes added.)

On September 9, 2004, in support of their July 16, 2004 Motion, Maternal Grandparents filed a Supplemental Memorandum in which they argued, in relevant part:

**I.   Arguments on Threshold Issue:**

**A.   Several significant changes in circumstances warrant a modification and expansion of [Maternal Grandparents'] visitation.**

**1.   The most serious of significant circumstances is that [Child] is exhibiting suicidal ideations.**

. . . .

**2.   A second significant change in circumstance is that [Child] has been diagnosed as suffering from a serious mental health condition of depression by Dr. George Makini, Jr., described as "Adjustment Disorder with disturbance of mood and conduct."**

. . . .

**12.**   See n. 3 above.

**13.**   In other words, Respondent–Appellee Kalaniana'ole Paris Apuakehau (Father) alleged that one day prior to the July 16, 2004 filing in this FC–M case by Petitioners–Appellants Kūnani Nihipali (Maternal Grandfather) and Ipō Nihipali (Maternal Grandmother) (collectively, Maternal Grandparents) of their Motion for Hearing to Modify and Expand Visitation and for Appointment of a Guardian Ad Litem for Child, Nohealani Sandee Nihipali (Mother) filed in the FC–P case a Motion for Relief After Judgment or Order and Declaration requesting that she be awarded joint legal and physical custody of, and that the Court appoint a custody guardian ad litem for

the child (Child), born on October 15, 1994. There is no indication that a consolidated hearing was considered.

**14.**   "Type A" visitation generally involves alternate weekends including Friday and Monday holidays, alternate Tuesday, Wednesday and Thursday holidays, one-half Christmas vacation, one-half summer vacation, alternate Easter, Thanksgiving and Halloween days, alternate Child's birthdays, Father's day and Father's birthday with Father and Mother's day and Mother's birthday with Mother, and a daily telephone contact during a reasonable hour.

3. A third significant change in circumstance is that [Father] has made visitation difficult, has frustrated [Maternal Grandparents'] ability to carry out their kūleana [sic] (responsibility) to [Child], and has taken steps to minimize the role of the Nihipali ʻohana in [Child]'s life, including taking action amounting to constructive termination of visitation and parental rights of Mother, [Maternal Grandparents'] daughter, all contrary to the best interests of [Child].

. . . .

II. The carrying out of [Maternal Grandparents'] kūleana [sic] (responsibility) to their moʻopuna, (grandson and hiapo) [Child], is constitutionally protected under Section 7 of Article XII and the tradition and customary practices of ʻohana and specifically this kūleana [sic] warrant protection by the court and is in the best interest of [Child] and his ʻohana.

. . . .

III. Although in many cases, Hawaiians have been seriously disadvantaged under western law, the cultural practices and traditions of the Hawaiian peoples is protected by the state constitution[.]

. . . .

. . . It is not in the best interest of [Child] to deprive him of access to a vibrant and caring ʻohana that practice their culture in their every day life.

. . . .

. . . [Father's] attempts to minimize and mischaracterize [Maternal Grandparents'] constitutionally protect[ed] right to fulfill their kūleana [sic] and other cultural obligations to [Child] and [Child's] constitutionally protected kūleana [sic] and rights to exercise his cultural practices should be rejected by this Court[.]

(Emphasis in the original; formatting as in the original; record references omitted.)

The July 16, 2004 Motion was heard by the court on September 9, 2004. The September 21, 2004 Order that followed states, in relevant part:

On January 15, 2003, [Maternal Grandparents] agreed on the record in Court to a schedule for visitation, in which [Maternal Grandparents] were provided with certain times for visitation with the minor child, subject to the discretion of FATHER as to activities/requirements of FATHER's family. [Maternal Grandparents] now seek to "expand" their visitation (separate and apart from the visitation of [Mother]) to two weekends per month, and the intervening weekdays between the two weekends.[15] In addition, [Maternal Grandparents] ask the Court to order FATHER to consult them concerning various aspects of [Child's] life which [Maternal Grandparents] deem important. [Maternal Grandparents'] proposed Order would, if adopted by the Court, effectively grant them de facto physical and legal custody of

15. Ignoring the requests stated in their July 16, 2004 Motion for Hearing to Modify and Expand Visitation and for Appointment of a Guardian Ad Litem for Child, Maternal Grandparents state, in the opening brief, that at the September 9, 2004 hearing they

suggested an expansion of time to include Monday through Friday of the week prior to the last weekend of the month provided in the April 2003 Order. This would amount to a total of six days per month. . . . Contrary to the Family Court Order, [Maternal Grandparents] did not request "two weekends per month, and the intervening weekdays between the two weekends."

(Record citations omitted.) In fact, at that hearing, counsel for Maternal Grandparents stated, in relevant part:

However, since we have to stick to some kind of schedule, they have presented some options. And one of the options was to try to have [Child] for at least a week or during a period of a week from like a Monday through Friday. And right now they [have] their 24 hours, and [M]other has Wednesdays. And they were just about to—I mean, you know, they were thinking along those line[s]; and I don't know where that has gone now. That was one of the options that they had wanted to put forth.

. . . .

This is the calendar. The first and the . . . third weekends would be with [F]ather. The second weekend would be with [M]other. The fourth weekend would be with [M]other and [Maternal Grandparents] working it out because they have an order. And during that third to fourth week, from Monday through Friday, [Child] would be with the [Maternal Grandparents].

[Child], contradicting the prior award of sole legal and physical custody to FATHER in the paternity action referenced above.

[Maternal Grandparents] also seek the appointment of a guardian ad litem for [Child], claiming that [Child] needs someone who he can "talk to", although they have not provided any evidence that communications between FATHER and [Child] are impaired or ineffective.

The sole justification advanced by [Maternal Grandparents] in support of the claimed relief lies in certain statements allegedly made by [Child], in June, 2003, to the effect that he contemplated taking his own life. [Maternal Grandparents] initiated the Honolulu Police Department report which purportedly documents such statements; although a police officer confirmed that [Child] had stated that he contemplated taking his life, the officer also noted that [Child] did not demonstrate signs of depression or a present intent to follow through on his statement. FATHER has since enrolled [Child] in therapy with Dr. George Makini, a pediatric psychiatrist, and [Child] continues in therapy with Dr. Makini. [Maternal Grandparents] have not provided the Court with evidence that FATHER's response to [Child's] statements is inappropriate, misguided or in any way wrong. As a practical matter, the Court finds that FATHER's retention of Dr. Makini was appropriate, that [Child's] treatment is continuing, and that Dr. Makini has a direction for resolution of [Child's] condition. [Maternal Grandparents] have not provided the Court with any credible, medical or psychiatric evidence that [Child's] condition would be improved by the extraordinary expanded visitation and prerogatives which they seek.

For reasons best known to [Maternal Grandparents] and their counsel, a report dated May 22, 2004, from Dr. Makini to [Child's] pediatrician was appended to a Declaration of Counsel and filed in this court. [Maternal Grandparents'] counsel quoted extensively from the letter in [Maternal Grandparents'] Supplemental Memorandum filed September 9, 2004. FA-

THER, as the custodian of [Child] and therefore the only person who could consent to disclosure and publication, objected to publication of Dr. Makini's report of therapy as an unwarranted, inappropriate and wholly unjustified intrusion into the medical privacy of [Child]. The Court agrees. The Court finds that the filing of Dr. Makini's letter was not in [Child's] best interests[,] that an appropriate waiver of [Child's] right to medical privacy was not sought or obtained by [Maternal Grandparents'] counsel before filing, and that counsel for [Maternal Grandparents] had no legitimate reason for making the records of [Child's] therapy a part of this case.

[Maternal Grandparents'] counsel's remarks at the hearing also indicate that [Maternal Grandparents'] counsel, without the knowledge, approval or consent of FATHER, contacted Dr. Makini and questioned him concerning his treatment of [Child]. The Court also finds that counsel's contact with Dr. Makini, without the express written approval of FATHER and his waiver of medical privacy, was inappropriate in the extreme. The fact that [Maternal Grandparents] have permitted their counsel to engage in conduct detrimental to [Child's] right to medical privacy, and to publish such sensitive records of therapy leads the Court to conclude that [Maternal Grandparents] do not have [Child's] best interests at heart.

The Court thus finds that [Maternal Grandparents] have failed to demonstrate a material change in circumstances favoring an expanded visitation with [Child]. The Court also finds that [Maternal Grandparents] have failed to show that expanded visitation lies in the best interests of [Child]. It is evident from the Motion and its supporting documentation that relations between FATHER and [Maternal Grandparents] are tenuous at best; it is evident that [Child] is a focal point of that conflict. The Court finds that [Maternal Grandparents'] proposed "expanded visitation" would increase the conflict and tension between [Maternal Grandparents] and FATHER over [Child] to the substan-

tial disadvantage of [Child]. This tension and conflict would certainly impede Dr. Makini's efforts, and would produce no discernible benefit, especially to [Child].

[Maternal Grandparents] have also failed to show any evidence that appointment of a Guardian Ad Litem rests in the best interests of [Child]. The Court finds that appointment of a Guardian Ad [L]item, as envisioned by [Maternal Grandparents], would interfere with FATHER's exercise of paternal authority and custody of [Child], and create an additional area of conflict which [Child] does not need.

Based upon the foregoing findings, IT IS HEREBY ORDERED:

(1) That [Maternal Grandparents'] Motion for Expanded Visitation And For Appointment Of A Guardian Ad Litem, be, and hereby is, denied.

(2) IT IS FURTHER ORDERED that the May 22, 2004 letter from Dr. Makini to Dr. V.J. Reddy concerning [Child] be sealed until further order of the Court.

(Footnote added.)

On October 1, 2004, Maternal Grandparents filed a motion for reconsideration and/or a new trial or further hearing or relief. On October 4, 2004, Maternal Grandparents filed an amended motion for reconsideration. The November 12, 2004 Order denied the amended motion and stated:

> The Court finds that the First Amended Motion for Reconsideration filed herein on October 9, 2002, [sic] does not present any evidence which was not, or could have been presented at the hearing on September 9, 2004. The First Amended Motion for Reconsideration similarly fails to cite legal authority which was decided after the hearing on September 9, 2004, concerning the issues in this case. Finally, [Maternal Grandparents] have not demonstrated that the Court's decision is patently wrong.

On December 9, 2004, Maternal Grandparents filed a notice of appeal. This appeal was assigned to this court on August 1, 2005.

## DISCUSSION

### I.

The challenge by the Maternal Grandparents of the validity of the April 15, 2003 Order has no merit. After failing to timely appeal an order which the court had jurisdiction to enter, the only way a party may challenge the validity of that order is by seeking relief pursuant to Hawai'i Family Court Rules Rule 60(b) (2006). In their July 16, 2004 Motion, the Maternal Grandparents did this. Upon review of this motion, we affirm the family court's decision denying the requested relief.

### II.

█ Maternal Grandparents allege that, at the September 9, 2004 hearing, the family court "excluded" the oral testimonies of Maternal Grandfather, Mother, Kamana'opono Crabbe, Richard Likeke Paglinawan, and Stanford M.J. Manuia and thereby reversibly erred. This allegation is not supported by the record. Maternal Grandparents have not cited in the record, and our search of the record did not reveal, any instance where they sought to present the oral testimony of any witnesses other than themselves. The proceedings on September 9, 2004, started with the parties being sworn to tell the truth. After the court advised counsel for the Maternal Grandparents that "this is your motion for hearing to modify and extend visitation and for appointment of a guardian ad litem[,]" the court, counsel for the Maternal Grandparents, and counsel for Father engaged in an extensive on-the-record discussion of the merits of the motion based on the information in the record. At the conclusion of that discussion, the following was stated:

> [COUNSEL FOR MATERNAL GRANDPARENTS]:. . . .
>
> And my clients would like to speak to you. They haven't had a hearing since the first time they filed this case; and they would at least like to be heard today, if that's possible.
>
> THE COURT: You know, that's the reason they have an attorney is to speak for them. I understand that they may want to address the Court—

[COUNSEL FOR MATERNAL GRANDPARENTS]: Okay. Well, can I speak to them to find out what it is that they think is important to say? Because they both have something they feel is important to say having heard the argument from opposing counsel and are very concerned.

THE COURT: Well, why don't you speak to them very briefly. If I give them—only one of them can speak. And then [Father], if he chooses, can speak to the Court also.

After Maternal Grandmother and Father both spoke to the court on the record, the court stated as follows:

THE COURT: Thank you very much. . . . I'm going to take this matter under advisement. I'm going to look over the materials which have been submitted in support of and in opposition to the motion again, and you'll have a decision before the close of business tomorrow. Thank you very much.

No one objected. No one asked the court to proceed differently. The September 21, 2004 Order followed.

This case does not involve any material disputes of fact. The findings of fact (as opposed to the conclusions of law and the discretionary decisions) stated in the September 21, 2004 Order are statements of undisputed fact. Everything anybody had to say in this case is stated in one or more documents in the record. This is true of Maternal Grandfather, Mother, Kamanaʻopono Crabbe, Richard Likeke Paglinawan, and Stanford M.J. Manuia. There is no indication that any of them wanted to amend or add to their written and/or oral statements. The parties submitted the matters in dispute to the court for its decision based on the record and the court validly rendered its decision on that basis.

## III.

■ Maternal Grandparents allege that the material change in circumstance that justifies their request for expansion of their visitation rights is that in June of 2003, Child stated that he had thoughts of killing himself. Maternal Grandparents allege this notwithstanding the fact that on September 9, 2004, counsel for Maternal Grandparents filed a letter dated May 22, 2004 from George K. Makini, Jr., M.D. Psychiatrist, to "VJ Reddy, MD", that stated in relevant part:

On May 20th and 22nd I completed a psychiatric evaluation of [Child]. . . . The original reason for the referral was for suicidal thoughts reported during the week prior to the first date of the evaluation. My clinical impression is Adjustment Disorder with disturbance of mood and conduct (309.4). Treatment plan is psychotherapies; individual and family. I believe the issue is that he feels abandoned by his biological mother, and feeling guilty that he has strong positive feelings toward his step-mother.

Prognosis is fair. Duration of treatment is estimated to be 3 to 6 months.

In light of Dr. Makini's letter, Child's suicidal thoughts are not a material change in circumstance relative to the visitation rights of Maternal Grandparents.

## IV.

■ Maternal Grandparents contend that the family court's decisions "that the filing of Dr. Makini's letter was not in [Child's] best interests . . . and that counsel for [Maternal Grandparents] had no legitimate reason for making the records of [Child's] therapy a part of this case" are erroneous.[16] For the

---

**16.** The interest of Child in the confidentiality of his medical records is afforded constitutional protection as "informational privacy" under article I, section 6 of the Hawaiʻi Constitution. Rule 511, Hawaiʻi Rules of Evidence, Chapter 626, Hawaii Revised Statutes (HRS) (1993) states:

**Waiver of privilege by voluntary disclosure.** A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person

or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply ʻif the disclosure itself is a privileged communication.

In *State v. Moses*, 107 Hawaiʻi 282, 112 P.3d 768 (App.2005), this court concluded that the Circuit Court's finding that defendant waived his physician-patient privilege as to defendant's toxicology tests was not clearly erroneous; defendant's

following two reasons, we agree. First, according to the record, a copy of Dr. Makini's letter was provided to Maternal Grandparents by counsel for Father. Second, Child's mental/emotional problems and treatment are issues in this case. The court's decision "that the filing of Dr. Makini's letter was not in [Child's] best interests ... and that counsel for [Maternal Grandparents] had no legitimate reason for making the records of [Child's] therapy a part of this case" is clearly contradicted by the court's decision in the preceding paragraph that "[a]s a practical matter, the Court finds that FATHER's retention of Dr. Makini was appropriate, that [Child's] treatment is continuing, and that Dr. Makini has a direction for resolution of [Child's] condition."

## V.

■ Maternal Grandparents contend that the family court erred in its decision not to appoint a guardian ad litem for Child as authorized by Hawaii Revised Statutes (HRS) § 571–46(8) (Supp.2005).[17] At the hearing, counsel for Maternal Grandparents stated the following reason for the request:

> The reason we need a guardian ad litem is because [Child] himself, who also has a constitutional right to exercise his cultural

responsibility and visitation and access to his [Maternal Grandparents], needs to be able to talk [to] someone neutral who's going to listen to him and be his friend and sort of his spokesperson in this matter because he's not being allowed to express himself such that he's saying he wants to kill himself.

We conclude that the family court did not abuse its discretion.

## VI.

Article XII, § 7 of the Hawai'i Constitution states:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a[18] tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

(Footnote added.)

HRS § 1–1 (1993) states:

> The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as

counsel, acting as defendant's agent, delivered the toxicology report to the prosecutor and entered no objection to the prosecutor's subpoena duces tecum of defendant's medical records, including the toxicology report. *Id.* at 291–92, 112 P.3d at 777–78. (Citing *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 341 (9th Cir.1996) (United States Court of Appeals for the Ninth Circuit holding that "the focal point of privilege waiver analysis should be the holder's disclosure of privileged communications to someone outside the privileged relationship, not the holder's intent to waive the privilege.... For example, a holder's disclosure of privileged communications during discovery waives the holder's right to claim the privilege as to communications about the matter actually disclosed, despite the holder's bare assertion that it did not subjectively intend to waive the privilege when it made the disclosure.")) (Brackets omitted.) *See, Save Sunset Beach Coalition v. Honolulu*, 102 Hawai'i 465, 486, 78 P.3d 1, 22 (2003). In the instant case, Maternal Grandparents allege, in the opening brief, that "[c]ounsel for Father provided this document to counsel for [Maternal Grandparents]. [Maternal Grandparents] did not request it. It was given to them voluntarily by Father's counsel." (Record citations omitted.)

17. HRS § 571–46 (Supp.2005) states, in relevant part, as follows:

> **Criteria and procedure in awarding custody and visitation.** In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, ...:
> ....
> (8) The court may appoint a guardian ad litem to represent the interests of the child and may assess the reasonable fees and expenses of the guardian ad litem as costs of the action, payable in whole or in part by either or both parties as the circumstances may justify[.]

18. An "ahupua'a" is a "[l]and division usually extending from the uplands to the sea, so called because the boundary was marked by a heap *(ahu)* of stones surmounted by an image of a pig *(pua'a),* or because a pig or other tribute was laid on the altar as tax to the chief...." Mary Kawena Pukui & Samuel H. Elbert, *Hawaiian Dictionary* 9 (rev. ed.1986).

otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage; provided that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State.

HRS § 571–46 (Supp.2005) states, in relevant part:

**Criteria and procedure in awarding custody and visitation.** In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

(1) Custody should be awarded to either parent or to both parents according to the best interests of the child, ...;

. . . .

(7) Reasonable visitation rights shall be awarded to parents, grandparents, siblings, and any person interested in the welfare of the child in the discretion of the court, unless it is shown that rights of visitation are detrimental to the best interests of the child[.]

HRS § 571–46.3 (Supp.2005) states, in relevant part:

**Grandparents' visitation rights; petition; notice; order.** A grandparent or the grandparents of a minor child may file a petition with the court for an order of reasonable visitation rights. The court may award reasonable visitation rights provided that the following criteria are met:

(1) This State is the home state of the child at the time of the commencement of the proceeding; and

(2) Reasonable visitation rights are in the best interests of the child.

. . . .

.

An order made pursuant to this section shall be enforceable by the court, and the court may issue other orders to carry out these enforcement powers if in the best interests of the child.

■ In the opening brief, Maternal Grandparents contend that they

are descendants of Native Hawaiians who inhabited the Hawaiian Islands prior to 1778 and assert and perform their customary kuleana right as Tutu to their moʻopuna (grandchild), which requires the kuleana right to have visits with him. They ask the Court to respect and enforce the kuleana right of [Child] to visit his Tutu and be healed by their aloha. The plain language of Article XII, § 7 of the Hawaii Constitution states that "... all rights, customarily and traditionally exercised ..." will be protected. It is clear that the framers of Article XII § 7 sought to prevent interference with the exercise of a traditional and customary practice. These cultural kuleana (responsibility) are also codified in HRS § 1–1. [Maternal Grandparents] are seeking to exercise their kuleana (responsibility) and to protect the Kuleana of their moʻopuna (grandson) and their ʻohana (family).

. . . .

[Child's] well-being requires that he be able to visit with [Maternal Grandparents], and other members of the Nihipali ʻohana to whom he is genealogically connected. It is imperative for [Child] to maintain the important relationships, connections and interdependency with the Nihipali ʻohana both [sic] present, past and future. [Maternal Grandparents] asked the Court to find [sic] as a matter of law that the statutory, constitutional, traditional and customary rights of access to grandparents must be protected and embrace the need for a cultural response intended to help heal the hurt [Child] is experiencing. [Maternal Grandparents] asserted that under the statutory and common law and Constitution of the State of Hawaii, this Court must protect Tutu traditional and customary kuleana/right to serve their function as grandparents in maintaining and improving the physical, mental, spiri-

tual, and cultural health of their grandson. Under Hawaiian custom and cultural practices, [Maternal Grandparents] are the educators and disseminators of tradition and culture to their moʻopuna (grandchild).

(Footnotes and record citations omitted).

Assuming, without implying, that Article XII, § 7 of the Hawaii Constitution and/or HRS § 1–1 have any relevant applicability to such situations, the question is whether Article XII, § 7 of the Hawaii Constitution and/or HRS § 1–1 authorize native Hawaiian grandparents any more visitation rights than HRS § 571–46(7) and HRS § 571–46.3 (Supp.2005) authorize for all grandparents, native Hawaiian and non-native Hawaiian. The answer is no.

## VII.

Notwithstanding all their verbiage about the "Nihipali ʻohana", Maternal Grandparents contend that "the Family Court abused its discretion by requiring that [Maternal Grandparents'] visitation with their grandson be tied into Mother's visitation rights." In doing so, Maternal Grandparents ignore Mother's (1) membership in the "Nihipali ʻohana" and (2) the July 8, 2004 affidavit wherein she requested that "when [her] job as a United Airlines flight attendant interferes with [her] ability to exercise [her] rights to 'reasonable' visits with [Child], for [Child] to visit with [Maternal Grandparents] in [her] stead."

Maternal Grandparents state, in the opening brief, that they

sought an expansion of visits because they could not rely on Father's goodwill nor on Mother's unclear and unstable visitation schedule. [Maternal Grandparents'] inability to enforce visitation, or even the April 2003 Order providing for twenty four hour visits, rendered their visitation rights essentially meaningless for actual visitation. Thus an expanded Order was appropriate.

(Record citations omitted). These are reasons to seek enforcement, not expansion of the visitation rights.

We note, however, the following reasons as to why the Maternal Grandparents' visitation rights should have been modified (but not expanded). The April 15, 2003 Order assumes that (a) Father and Maternal Grandparents have an amicable relationship such that they can mutually agree on "[t]he particular weekend day" of their "once a month" visitation, and (b) Mother has an "unclear and unstable visitation schedule." Both of these assumptions are no longer true. Father and Maternal Grandparents do not have an amicable relationship. As noted above, Father informed the court that on August 26, 2004, Mother agreed to a specific Schedule "A" type visitation.

## CONCLUSION

Accordingly, we vacate the following part of the family court's September 21, 2004 Order Denying Motion for Post Decree Relief for Expanded Visitation and for Appointment of Guardian Ad Litem:

For reasons best known to [Maternal Grandparents] and their counsel, a report dated May 22, 2004, from Dr. Makini to [Child's] pediatrician was appended to a Declaration of Counsel and filed in this court. [Maternal Grandparents'] counsel quoted extensively from the letter in [Maternal Grandparents'] Supplemental Memorandum filed September 9, 2004. FATHER, as the custodian of [Child] and therefore the only person who could consent to disclosure and publication, objected to publication of Dr. Makini's report of therapy as an unwarranted, inappropriate and wholly unjustified intrusion into the medical privacy of [Child]. The Court agrees. The Court finds that the filing of Dr. Makini's letter was not in [Child's] best interests[,] that an appropriate waiver of [Child's] right to medical privacy was not sought or obtained by [Maternal Grandparents'] counsel before filing, and that counsel for [Maternal Grandparents] had no legitimate reason for making the records of [Child's] therapy a part of this case.

[Maternal Grandparents'] counsel's remarks at the hearing also indicate that [Maternal Grandparents'] counsel, without the knowledge, approval or consent of FATHER, contacted Dr. Makini and ques-

tioned him concerning his treatment of [Child]. The Court also finds that counsel's contact with Dr. Makini, without the express written approval of FATHER and his waiver of medical privacy, was inappropriate in the extreme. The fact that [Maternal Grandparents] have permitted their counsel to engage in conduct detrimental to [Child's] right to medical privacy, and to publish such sensitive records of therapy leads the Court to conclude that [Maternal Grandparents] do not have [Child's] best interests at heart.

In all other respects, we affirm the September 21, 2004 Order Denying Motion for Post Decree Relief for Expanded Visitation and for Appointment of Guardian Ad Litem and the November 12, 2004 Order Denying First Amended Motion for Reconsideration. We remand for a modification (but not an expansion) of Maternal Grandparents' visitation rights as stated in the April 15, 2003 "Stipulation and Order Re: Grandparents' Visitation" in light of the facts that Father and Maternal Grandparents do not have an amicable relationship and Mother has specific Schedule "A" visitation rights.